THE STATE EX REL. EVERETT R. MEYER v. CHARLES P. WOODBURY, Judge of Division Two of Jackson County Circuit Court, and THOMAS W. LEE.—10 S. W. (2d) 524.

Court en Banc, October 30, 1928.

`L. A. Laughlin, Samuel A. Dew, Nelson E. Johnson` and `Raymond G. Barnett` for relator.

`J. M. Fisher` for respondents.

WHITE, C. J.—On October 9, 1928, relator filed in this court his petition asking for a writ of prohibition to prevent Respondent Judge Woodbury from ordering the Board of Election Commissioners of Kansas City to place the name of Respondent Lee upon the registration books of the Sixteenth Precinct of the Eighth Ward of that city.

Upon this petition a preliminary rule was ordered. On the same day respondents, waiving the issuance and service of notice, filed in this court their motion to dismiss the petition of the relator, and consented that the whole matter be determined upon said motion.

The petition of relator, Everett R. Meyer, alleges that he is candidate for the office of Representative in the General Assembly of Missouri from the Tenth District of Jackson County, which includes the said precinct.

Attached to relator's petition is a copy of the petition of Respondent Thomas W. Lee, filed in the Circuit Court of Jackson County, in which Lee alleges that he was a duly qualified voter of Kansas City and resided in the Sixteenth Precinct of the Eighth Ward of said city. That September 24, 1928, the same being the first registration day for the general election to be held November 6, 1928, he was present in Kansas City during the hours provided by law for registry in said precinct, but made no application to be registered; that during the three remaining days for registration he was outside the limits of Kansas City on business; that he had made no application to the Board of Registry of said precinct, nor to the Board of Election Commissioners of Kansas City to be registered as a qualified voter. The prayer of the petition is for an order directing the Board of Election

Commissioners to place forthwith his name on the registry as a qualified voter.

The record filed with relator's petition shows that October 8, 1928, he filed a motion in the cause in Judge Woodbury's court to dismiss the proceeding of Lee, which motion was overruled.

Certain facts stated in Lee's petition, filed in the circuit court, must be taken as true:

He was a qualified voter in the Sixteenth Precinct of the Eighth Ward of Kansas City.

He was in the city on the first registration day, September 24, 1928, and out of the city the following three registration days.

There is no allegation that he was out of the city at any other time. Those days occurred in the sixth week before election day. We may presume, therefore, that he was in the city at all times thereafter.

I. The allegation of Lee's petition in the circuit court is that he made no application "to the precinct Board of Registry of the said precinct to be registered as a qualified voter, nor has he made such application to the Board of Election Commissioners of Kansas City."

In effect he boldly says that he had a right to register without compliance or attempted compliance with the registration laws.

He does not classify his cause, nor name the particular proceeding which he instituted in the circuit court. In effect it is a petition for a writ of mandamus. No other name can be attached to it, for he asks a peremptory order directing the Board of Election Commissioners to register his name as a qualified voter.

Section 23, Article VI, of the Constitution, gives a circuit court "superintending control over all inferior tribunals," which no doubt includes this Board of Election Commissioners. That superintending control can be exercised by mandamus only when such board fails or refuses to perform some ministerial act which its clear duty requires it to perform. The circuit court cannot by mandamus compel such board to act in a matter where the latter is vested with discretion. [State ex rel. v. Bolte, 151 Mo. 362; State ex rel. v. City of Willow Springs, 208 Mo. App. 1. c. 4; State ex rel. v. Fort, 180 Mo. 1. c. 109; 38 C. J. 659.]

Section 22 of the Acts of 1921, relating to registration in cities of 100,000 inhabitants or over (Laws 1921, pp. 341-4), provides that a general registration by the Board of Registry shall be had on Monday, Tuesday, Wednesday and Thursday of the sixth week prior to the election. It provides the method of an application to register, and the qualification of the applicant,

Section 27 of the act provides that on four days of the following week the board shall sit and revise the lists.

Section 30 of the act provides for the registration of those who were unable to register on the regular registration days by reason of sickness or absence from the State. Three days are set apart for the purpose, Monday, Tuesday and Wednesday prior to election day. The absentees and disabled have all the time from the registration days until the Monday, Tuesday and Wednesday before election to present their application to register. From these statutory provisions it is plain that the Board of Registry has discretion to pass upon the qualifications of voters applying to register, discretion to revise the list of registered voters so as to exclude those not qualified, discretion to determine the facts which would enable one who has failed to register on the regular registration days to register on those last two days.

Thus the circuit court has no jurisdiction to control by mandamus such discretionary action. The Legislature, however, has provided a method for review of any action of the board. Section 33 of the Act of 1921 provides that in all cases where a person is denied registration, or his name is stricken from the list, an appeal shall be allowed to the circuit court. That statute affords an effective remedy for anyone who has attempted to comply with the law and has been denied the right to register. This remedy is exclusive so far as Lee's case is concerned.

Lee has not even attempted to comply with the law. He has not applied to the board to register; it has not refused to register him. He states no cause of action, even if the circuit court had jurisdiction of his case.

II. Respondent Lee, however, bases his right to be registered on the assertion that the Act of 1921 is unconstitutional. Certain amendments to the Constitution relating to franchise and elections were adopted in 1924. Sections 2 and 5, of Article VIII, were amended to read as follows:

"Sec. 2. *Qualifications of voters.* All citizens of the United States, including occupants of soldiers' and sailors' homes, over the age of twenty-one years who have resided in this State one year, and in the county, city or town sixty days immediately preceding the election at which they offer to vote, and no other person, shall be entitled to vote at all elections by the people: provided, no idiot, no insane person and no person while kept in any poorhouse at public expense or while confined in any public prison shall be entitled to vote, and persons convicted of felony, or crime connected with the exercise of the right of suffrage may be excluded by law from the right of voting.

"Sec. 5. *Registration in certain cities and counties.* The General Assembly shall provide by law for the registration of voters in counties having a population of more than one hundred thousand and in cities having a population of more than ten thousand, but not otherwise. The first General Assembly held after the adoption of this Constitution shall pass laws necessary to enforce this provision, and for such purpose may classify such counties and cities according to population, but such laws shall be uniform as to each class.''

Respondent emphasizes the expression "all citizens . . . shall be entitled to *vote* at all elections by the people.'' And, if we understand the argument correctly, the registration law imposes conditions upon the citizens which the amendment to the Constitution of 1924 nullified.

Respondent Lee is not in position to question the constitutionality of the registration law. He is not here seeking to vote; he is demanding the right to *register*. He is not complaining that he  has been denied the right to vote. If he is correct, the registration law has no effect, he had a right to vote without registering; and all he has to do is to present himself as a voter on election day and demand the right to vote, he can then compel the election officers to permit him to vote.

But he is demanding the right to register, and by that demand recognizes the validity of the registration law. He thus concedes that he must register in order to be a qualified voter. He cannot be heard to claim a right under a law which we would hold to be unconstitutional.

However, it may be well to note a part of his argument, to the effect that the constitutional amendment of 1924 was adopted *after* the Act of 1921, and it provides that the General Assembly *"shall* pass all laws necessary to enforce this provision'' (relating to registration). The argument seems to be that the prior law is inadequate. There can be no doubt that the law as it was in existence, not inconsistent with the new provisions of the Constitution as amended, remained in force. The Legislature of 1925 evidently thought the Registry Act needed very little amendment to make it conform to amended Section 5, Article VIII, of the Constitution, set out above, which changed the requirements of registration in cities of less than a hundred thousand from twenty-five to ten thousand. The Legislature amended Section 5085, Revised Statutes 1919, so as to make the law accord with that provision of the Constitution. Another difference in the amendment to the Constitution was that in the old Section 5, Article VIII, it was optional with the legislature whether it would provide for registration in cities under a hundred thousand, whereas new Section 5 provides that the General Assembly *shall* provide by law for registration in cities of over ten thousand. We are unable to

see how that affects the situation. The act is constitutional. [State ex rel. v. Mason, 155 Mo. l. c. 499, affirmed by U. S. Supreme Court, 179 U. S. 328.]

III. Another point made by respondent is that the requirements in the Act of 1921 with which a voter must comply before he is entitled to register are unreasonable, and invalid for that reason.

Section 22 of the Act of 1921, as noted above, provides that there shall be four registration days—Monday, Tuesday, Wednesday and Thursday of the sixth week—prior to the election. It provides the officials, the machinery, the registry books and everything necessary for the carrying out the purpose of the act. Anyone who shall be twenty-one years of age on the day of next election shall be allowed to register.

Section 30 provides that, if any person who has the qualifications which entitle him to vote shall be absent from the city or confined by illness or other disability during all the days appointed for registration prior to any election, he may file an application in the office of said election commissioners to have his name registered in the precinct in which he resides. Certain verification is required in support of his application. Thus the voter who is absent or disabled has all the time from the registration days in the sixth week before the election until the Wednesday, Thursday and Friday of the first week before election in which to make such application. Then the Board of Election Commissioners sits to hear applications. Section 33 then provides for an appeal from any act of the Registration Board denying registration or striking a name from the registration.

A number of cases are cited by the respondent to support his claim that this act is unreasonable. All of them emphasize the necessity of regulations which will insure an honest registration of the voters, so as to exclude fraud, and none of them hold any regulation as liberal as the Act of 1921 to be unreasonable.

Mills v. Greene, 67 Fed. 818, is cited, where the Federal court held an act of South Carolina unconstitutional. That act provided that all registration should be made before the first day of July preceding the election. The registration books were then closed and no one was permitted to register after that date—four months before the election. That regulation was held to be unreasonable for the reason that, during the four months prior to the election is the very time that people think about their duty and their privilege of voting.

The case of Daggett v. Hudson, 43 Ohio St. 548, is cited. In that case an Ohio statute provided seven days for registration, and no regulation whereby those constitutionally qualified voters might thereafter be registered. That was held to be unreasonable.

Other cases are cited where the regulation was less liberal than the cases just mentioned. All of them are old cases and arose in a time when transportation was difficult, and much time was required in going about from place to place. This is emphasized particularly in the Ohio case. In those days when men were distant from home a long time was required to return. With the present easy means of locomotion a voter can easily reach his home, although hundreds of miles distant, within a very few hours.

Respondent Lee does not complain that the alleged unreasonableness in the law prevented him from registering. He was present during the first day of registration and absent the remaining three days. He was in the city all the time after that until election day, so far as the record shows. He was not prevented from registering by reason of being unable to present his application for registration on the days set aside for the purpose on the first week before election. There is not a fact pleaded which prevented him from complying with the statute.

IV. Respondent makes a further point that the Board of Election Commissioners is a creature of the statutes, while the court is a constitutional body, and therefore may protect the rights of a citizen in his right of suffrage. As pointed out above, the citizen in this case is not seeking his right of suffrage, is not complaining of denial of his right to vote. He is seeking to enforce official action of the very body which he claims the court has a right to ignore. The court cannot ignore it and at the same time recognize it by compelling its action.

The preliminary rule is made absolute. All concur.